UNITED STATES *v.* WATSON, GEACH CO., INC. (NO. 4324)[1]

United States Court of Customs and Patent Appeals, February 3, 1941

*Charles D. Lawrence*, Acting Assistant Attorney General (*Richard E. FitzGibbon*, special attorney, of counsel) for the United States.

*Jerome G. Clifford* (*George W. Israel* of counsel) for appellee.

[1] C. A. D. 157.

[Oral argument December 12, 1940, by Mr. Lawrence and Mr. Israel]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

JACKSON, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Second Division, which sustained the protest of appellee and accordingly held certain lead content in silver sulphide ore to be free of duty under the provisions of paragraph 391 of the Tariff Act of 1930. The importation had been classified and assessed for duty under said paragraph at 1½ cents per pound.

The pertinent portion of the paragraph reads as follows:

PAR. 391. Lead-bearing ores, * * * 1½ cents per pound on the lead contained therein: *Provided*, That such duty shall not be applied to the lead contained in copper, gold, or silver ores, or copper mattes, unless actually recovered: * * *.

It appears that the protest relates to two entries, No. 802337 and No. 810239. An examination of entry 802337 shows that it related to 98 bags of "silver sulphides." Attached to the *pro forma* invoice with the entry is a chemist's report stating the lead content to be 33.37 per centum. The said invoice bears the notation of the examiner "as lead bearing ore 1½¢ lb. on lead P. 391 33.37% less 1.50%= 31.87% lead." Entry 810239 relates to 101 bags of "silver sulphides," and attached to the invoice therein is a chemist's report that the percentage of lead in the sulphides is 34 per centum. The notation of the examiner on the invoice reads: "as lead bearing ore 1½¢ lb. on lead P. 391 34.00% less 1.50=32.50% dutiable lead."

The suit was tried in New York City. The record contains the testimony of one witness only, who appeared on behalf of appellee. The sole question before the trial court was, and here is, whether the lead in the ore was actually recovered.

According to the record, the involved silver sulphide ore is paid for on the basis of the value of the metals found to be present by the assaying of samples. Thus the lead present is paid for, as is the silver and traces of gold.

It appears that in reducing silver sulphide ore it is necessary before smelting to add thereto certain quantities of pig lead, the amount of the latter depending upon the lead content of the ore to be smelted. When the lead in the ore is large in quantity less pig lead is needed. In the description of the reduction process herein, the pig lead was of domestic production and the lead content of the ore was considered to be high. After the ore with the pig lead added has been subjected to about 2 days smelting heat, it is reduced to a molten liquid with all of the lead and impurities on top of the heavier silver metal. Instead of the molten lead being drawn off, which unquestionably could be

done, if so desired, air is blown upon the lead and it is then run off as litharge lead oxide and what is left in the furnace is silver. In this process small quantities of the metals go into the flue as dust, but this is collected and taken to the blast furnace. The litharge is taken to the blast furnace department where it is used as a collector of precious metals, gold, silver and platinum. The witness stated:

* * * In the blast-furnace department we smelt sweepings, jewelers' sweepings. We use the lead as a collector. Then it goes back to the refining furnace.

\* \* \* \* \* \* \*

* * * In the blast furnace we recover precious metals of jewelry, gems. We have to have a collector for those precious metals.

The lead oxide apparently does not go back to the furnace where the silver is produced from the ore, but is used in the blast and refining furnaces over and over again until by reason of the losses it sustains in the latter two furnaces it eventually disappears.

The trial court held that the lead, although recovered for smelting purposes, is not sold as lead, and, based upon the fact that it is not sold, concluded that it was not "actually recovered." In this connection it is stated in the opinion of the trial court as follows:

In his complete and exhaustive brief, counsel for the plaintiff contends that the lead in the silver sulphide ore at bar is not actually recovered within the meaning of the paragraph 391 of the Tariff Act of 1930, arguing that the words "actually recovered" means actually recovered commercially.

With this contention we are inclined to agree not only on the ground of the common meaning of the words "actually recovered" but also because of the congressional history of said paragraph 391.

In holding that the congressional history of the involved paragraph fortified its own construction of the meaning of the words "actually recovered," the trial court quoted a portion of paragraph 392 of the Tariff Act of 1922 which was the predecessor of paragraph 391, *supra.* The quoted paragraph reads as follows:

Lead-bearing ores and mattes of all kinds, 1½ cents per pound on the lead contained therein: *Provided,* That such duty shall not be applied to the lead contained in copper mattes unless actually recovered * * *.

The court below then set out a part of the statement made by a representative of the American Smelting and Refining Co. before the Committee on Ways and Means of the House of Representatives with reference to the enactment of the here involved paragraph.

When said paragraph 391 was enacted the proviso clause appeared substantially in the words of the change urged by the representative of the said smelting and refining company. Comparing the said paragraphs it will be seen that the scope of paragraph 391 enlarged that of paragraph 392 by adding "flue dust" to the dutiable articles set forth in the latter and by expanding the proviso clause of 392 to

include lead contained in "copper, gold or silver ores." The last paragraph of the said statement quoted by the trial court is as follows:

The object of that [the proposed change] is that the copper ore is today on the free list. The same is true with respect to silver ore and gold ore. If, in the smelting and refining of these ores there is total destruction of the lead or zinc, as is true, then the ultimate result is that you are not assessing a duty on lead or zinc, but you are assessing a duty on gold ore or silver ore, or copper ore, which obviously was not the intent of Congress. [Vol. 3, p. 2551, Tariff Adjustment 1929, 70th Congress]

We are quite sure that the Congress did not intend to impose a duty on the lead content of the ores set out in the proviso of paragraph 391 if the lead is not actually recovered. The converse of this statement is likewise true. If the lead content of said ores is actually recovered it is dutiable, as held by the collector herein.

On the record here the silver contained in the involved ore was recovered when it was separated from the lead in the first smelting operation. The lead contained in the ore was likewise recovered in the same operation. Instead of being changed into litharge lead oxide it could have been drawn off and could have entered the channels of trade in the form of pure lead. The lead content of the ore when smelted joined with and was of the same character as the pig lead which had to be purchased and used in the reduction of the silver sulphide ore. It (the lead content of the ore) therefore took the place of lead which would have had to be purchased for use in recovering the silver content of the ore. No one could question that there had been an "actual recovery" of the lead in the ore if instead of being converted into litharge lead oxide it had been formed into pigs and used again in the operation which separated the silver from the lead content of silver sulphide.

The lead contained in the imported merchandise was not destroyed by the smelting of the said merchandise. It was recovered, and then, for an industrial purpose, it was converted into a litharge which was used in the blast furance, not in the further processing of the recovered silver, but as a collector in the smelting of precious metal scrap. Certainly there was a recovery of lead from silver sulphide ore which could have been the subject of commercial dealings in this country if so desired.

We find nothing in the record which would warrant this court in holding that appellee is precluded from selling the lead recovered from the silver sulphide ore and, therefore, the case of *Brown* v. *Maryland*, 12 Wheat 419, quoted in the opinion of the trial court has no application here.

It is immaterial to the decision of this case that the lead in oxide form finally disappears or is lost. It appears that the loss is not occa-

298

, sioned by reason of smelting· the silver sulphide ore,. but that it results from the distinct and separate operation of recovering precious metal scrap.

Since there is no question here as to the amount of lead assessed with duty, the case of *United States* v. *Consolidated Kansas City Smelting & Refining Co.*, 8 Ct. Cust. Appls. 406, T. D. 37665, cited by appellee is not in point. The following decisions of the tribunal below are also cited by the appellee: *International Smelting Co.* v. *United States*, T. D. 38463, 38 Treas. Dec. 558; *American Metal Co., Ltd.* v. *United States*, Abstract 46847, 45 Treas. Dec. 890; *Phillipp Bros.* v. *United States*, Abstract 3288, 51 Treas. Dec. 1287. These cases are not in point and will not be discussed.

The judgment of the United States Customs Court is *reversed*.